UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Case No. 22-cr-00061-RBW** |
| v. | : | |
| | : | |
| CAROL KICINSKI, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Carol Kicinski to 30 days of incarceration, 1 year of supervised release, 60 hours of community service, and $500 in restitution.

### I.      Introduction

Kicinski, a 65-year-old recently unemployed Florida resident, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

Kicinski pleaded guilty to one count of violating 18 U.S.C. § 1752(a)(1). As explained herein, a sentence of incarceration is appropriate in this case because Kicinski: (1) entered the

---

[1] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Capitol on two occasions; (2) entered highly sensitive locations, including the Speaker's Office in the Speaker's Suite; (3) spent nearly 20 minutes in the Capitol in multiple locations, including the Speaker's Chambers, Crypt and Rotunda; (4) and celebrated the damage to the Speaker's Office.

The Court must also consider that Kicinski's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Kicinski's crime support a sentence of 30 days of incarceration, 1 year of supervised release, 60 hours of community service, and $500 in restitution.

## II.      Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 44 (Statement of Offense), at 1-3.

### Defendant Kicinski's Role in the January 6, 2021 Attack on the Capitol

On January 5, 2021, Kicinski and codefendant, Jon Heneghan, traveled to Washington, D.C. together by plane from their home in Florida to attend the "Stop the Steal" rally.  On January 6, 2021, Heneghan and Kicinski attended the rally at the Ellipse and then made their way to the Capitol.

Kicinski arrived at the West Front of the Capitol at approximately 2:00 p.m.  The scene there was one of chaos.  Hundreds of police officers at the front of the inauguration stage, who had actively defended their position for over an hour, were flanked, outnumbered, and under continuous assault from the thousands of rioters directly in front of them, as well as members of the mob who had climbed up onto scaffolding above and to the side of them, many of whom were

hurling projectiles. By 2:28 p.m., with their situation untenable and openings in the perimeter having already led to breaches of the building, several large gaps appeared in the police defensive line at the West Front and a general retreat was called. With their defensive lines extinguished, several police officers were surrounded by the crowd. The rioters had seized control of the West Plaza and the inauguration stage. There were now no manned defenses between the crowd and several entrances into the United States Capitol Building, allowing the stream of rioters that had started entering the building around 2:13 p.m. to build to a torrent.

Kicinski initially entered the Capitol through the Senate Wing Door at 2:21 p.m. The Senate Wing Door had been breached approximately 10 minutes earlier and had obvious damage to the door and both windows on either side of the door.



*Figure 1: Kicinski's first entry through the Senate Wing Door*

Kicinski stayed near the Senate Wing Door for approximately 30 seconds and then exited the Capitol through the same Senate Wing Door where she initially entered. Approximately one minute later, Kicinski again entered the Capitol along with Heneghan.



*Figure 2: Kicinski's second entry through the Senate Wing Door*

After entering the Capitol through the Senate Wing Door the second time, Heneghan and Kicinski made their way down the hallway to the Crypt. Heneghan and Kicinski then proceeded with the mob to the second floor near Room 227.



*Figure 3: Heneghan and Kicinski heading up the stairs to the Speaker's Suite*

Once at the top of the stairs, Heneghan and Kicinski entered the Speaker's Office and Speaker's Suite.  Heneghan and Kicinski headed down the hallway towards the Rotunda upon exiting the Speaker's Office and Speaker's Suite.



*Figure 4: Kicinski as part of the mob leaving the Speaker's Suite*

Heneghan and Kicinski made their way to the Rotunda where they spent several minutes taking pictures and wandering around.



*Figure 5: Kicinski and Heneghan in the Rotunda*

Eventually, after spending approximately 20 minutes in the Capitol, Heneghan and Kicinski exited the Capitol out of the Rotunda Door at approximately 2:41 p.m.  Heneghan and Kicinski then traveled back to Florida together on a plane the night of January 6, 2021.

While Kicinski was inside the Capitol, she recorded at least one video with her cellular telephone. The video depicted the interior of the Speaker's Office, during which she states, "Oh my God! This is Nancy Pelosi's office! It looks like she left in a hurry. Oh my God. I would say that Americans are upset." Near the end of the video, Kicinski can be heard yelling, "SWAT! SWAT!" as she moves toward the door.

*The Charges and Plea Agreement*

On February 22, 2022, the United States charged Kicinski by criminal complaint with violating 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G). On February 23, 2022, law enforcement officers arrested her at her home in Florida.  On March 9, 2022 the United States charged Kicinski by a Superseding Information with violating 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G).  On November 8, 2022, pursuant to a plea agreement, Kicinski pleaded guilty to Count One of the Superseding Information, charging her with a violation of 18 U.S.C. § 1752(a)(1).  By plea agreement, Kicinski agreed to pay $500 in restitution to the Architect of the Capitol.

### III.     Statutory Penalties

Kicinski now faces a sentencing on a single count of violating 18 U.S.C. § 1752(a)(1).  As noted by the plea agreement and the U.S. Probation Office, Kicinski faces up to one year of imprisonment a term of supervised release of up to one year and a fine of up to $100,000. Kicinski

must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

**IV.    The Sentencing Guidelines and Guidelines Analysis**

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR. According to the PSR, the U.S. Probation Office calculated Kicinski's adjusted offense level under the Sentencing Guidelines as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B2.3(a)) | +4 |
| Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A)) | +2 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | -2 |
| Total Adjusted Offense Level | +4 |

*See* PSR at ¶¶ 32 - 41.

The U.S. Probation Office calculated Kicinski's criminal history as a category I. PSR at ¶ 44. Accordingly, the U.S. Probation Office calculated Kicinski's total adjusted offense level, after acceptance, at 4, and her corresponding Guidelines imprisonment range at zero months to six months. PSR at ¶ 76. Kicinski's plea agreement contains an agreed-upon Guidelines' calculation that mirrors the U.S. Probation Office's calculation.

Here, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

## V.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days of incarceration, 1 year of supervised release, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Kicinski's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Kicinski, the absence of violent or destructive acts is not a mitigating factor. Had Kicinski engaged in such conduct, she would have faced additional criminal charges.

One of the most important factors in Kicinski's case is that she initially entered the Capitol through the damaged Senate Wing Door and then quickly exited the Capitol.  However, Kicinski then chose to reenter the Capitol a second time for a significant period of time.  Kicinski's time in the Capitol involved several different areas of the Capitol, to include the Speaker's Office and Speaker's Suite, the Crypt as well as the Rotunda.  Although Kicinski did not encourage violence, she did celebrate the destruction which took place in the Speaker's Office and Speaker's Suite. Kicinski spent approximately 20 minutes in the Capitol, where she observed damage to the Capitol as rioters overwhelmed police officers and caused damage to the Capitol.

### B.  The History and Characteristics of Kicinski

Kicinski has no criminal history.  S*ee* PSR ¶ 44.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The government credits Kicinski for taking responsibility for her actions on January 6. In considering the need for specific deterrence, however, the government notes that Kicinski made repeated mistakes on January 6, entering the U.S. Capitol building twice, despite the obvious signs that she was not permitted to be there. She further compounded her mistakes by venturing deep into the U.S. Capitol, including the highly sensitive office space of the Speaker of the House, where she took videos.  Kicinski was fully aware of the sensitive nature of that space, and that Congresswoman Pelosi's office staff had vacated the space in a hurry.  Kicinski was not deterred, and even encouraged the riotous mob as she yelled "SWAT! SWAT!"

Kicinski's serious and repeated lack of judgment on January 6 make clear the need for specific deterrence.  A short period of incarceration is warranted in order to deter Kicinski from repeating her mistakes the next time her favored presidential candidate does not win an election.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Kicinski based on her own conduct and relevant characteristics, but should give substantial weight to the context of her unlawful conduct: her participation in the January 6 riot.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Kicinski has pleaded guilty to Count One of the Superseding Information, charging her with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). This offense is a Class A misdemeanor. 18 U.S.C. § 3559.  The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct".  So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity.

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every

sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6)."). If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who spent time in other sensitive places within the Capitol. A defendant's entry into a sensitive space, such as the Speaker's Office in the Speaker's Suite, places that defendant in a more serious category of offenders than defendants who remained in hallways or central, more public spaces,

such as the Rotunda. A defendant who entered a sensitive space took an extra step to occupy the

Capitol and displace Congress and to display the dominance of the mob over the will of the people.

That person's presence is even more disruptive. An unauthorized individual in a private office

poses a greater threat and creates a greater impediment to members of Congress and staffers just

trying to do their jobs than would a trespasser passing through a hallway.

One of the most famous photographs from January 6 is that of a rioter in Speaker Pelosi's

office, with his feet on her desk. *See* Amended Complaint, *United States v. Richard Barnett,* 21-

cr-38, ECF No. 3, at 2. That photograph has become notorious likely for exactly this reason,

because of what invading the office of a member of Congress represents: a show of intimidation,

an attempted display of power, above and beyond entering the building.

In *United States v. Derek Jancart and Erik Rau*, 21-cr-148 (JEB) and 21-cr-467 (JEB), the

defendants pled guilty to misdemeanor charges of 40 U.S.C. § 5104(e)(2)(D) (disorderly conduct

in the Capitol building) in connection with penetrating the Capitol building all the way to the

Speaker's Conference Room. Judge Boasberg sentenced the defendants each to 45 days of

incarceration.

In *United States v. Courtright,* No. 21-cr-72 (CRC), a misdemeanant who reached the

Senate Floor, even though she does not appear to have known where she was, also received a

sentence of incarceration.  In addition to entering a sensitive space, Courtright took a "members

only" sign and was asked to return it, and stood by as others around her destroyed property.

Kicinski, by contrast, took videos and celebrated rioter's intrusions into Nancy Pelosi's Office

Suite.  Courtright pleaded guilty to 18 U.S.C. § 1752(a)(1) and was sentenced to 30 days'

incarceration.

In *United States v. Melody Steele-Smith*, No. 21-cr-77 (RDM), the defendant pleaded guilty to 18 U.S.C. §1752(a)(1) and received a sentence of 36 months' probation and 90 days home detention. The facts of Steele-Smith's case are remarkably similar to Kicinski's. Like Kicinski, Steele-Smith entered the Capitol at the West Front and entered the private offices of the House Speaker. Steele-Smith was inside the U.S. Capitol for roughly 45 minutes while Kicinski was inside the U.S. Capitol for about 20 minutes and entered twice.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## VI. Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to

restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Kicinski must pay $500 in restitution, which reflects in part the role Kicinski played in the riot on January 6.[4] Plea Agreement at ¶ 16. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. *Id.* Kicinski's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 92.

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," and any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Kicinski to 30 days of incarceration, 1 year of supervised release, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on her liberty as a consequence of her behavior, while recognizing his acceptance of responsibility for her crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    *s/ Zachary Phillips*
       Assistant United States Attorney
       CO Bar No. 31251
       Capitol Riot Detail
       United States Attorney's Office, Detailee
       1801 California Street, Suite 1600
       Denver, CO 80202
       Telephone: (720) 281-1611
       Zachary.phillips@usdoj.gov

## CERTIFICATE OF SERVICE

On this 20 day of June, 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

        s/ *Zachary Phillips*
        Assistant United States Attorney
        CO Bar No. 31251
        Capitol Riot Detail
        United States Attorney's Office, Detailee
        1801 California Street, Suite 1600
        Denver, CO 80202
        Telephone: (720) 281-1611
        Zachary.phillips@usdoj.gov